Peck, J.
delivered the opinion of the court.
White, Dougherty and M’Whorter were partners in a mercantile establishment in the town of Winchester:' Dougherty purchased out White, and on the 1st day of August, 1815, Dougherty and M’Whorter dissolved partnership. On looking over the accounts of the firm, and on the representations of M’Whorter, who had the management of the concern, it seemed that the establishment had made profits to the amount of five thousand dollars} one half of which, it was agreed, M’Whorter was entitled to, and Dougherty permitted him to withdraw twenty-five hundred dollars, and was to give him four hundred dollars for his interest in a drove of cattle. M’Whor-ter thereupon gave to Dougherty his covenant, by which it was agreed that the partnership was that day dissolved, that Dougherty was to leave the partnership effects, real estate, debts due the firm,, &c. and was to be liable for all debts owing from the firm to creditors thereof. Then follows this clause: “M’Whorter agrees that all mistakes in amount of balances of notes or books, if any, in addition, or omission to credit, or otherwise, are to be corrected and charged, or credited as they accrued on settlement of said accounts, and he, the said Dougherty, has full power to make fair and equitable settlements with all the creditors of White, Dougherty and M’Whorter; *247 and should the said sum of twenty-seven thousand nine hundred and sixty-iour dollars and twenty-seven cents, after correcting all errors in the before recited eight thousand seven hundred and one dollars and sixty-four cents, the amount of notes and book accounts as per list of balances, be insufficient to pay all the debts of' the firm of White, Dougherty and M’Whorter, he, the said John Dougherty, paying all cost of collection of said debts, and leave a balance in the hands of said Dougherty of twenty-five hundred dollars in cash or good debts, supposed to be his part of the profits of said firm, and the amount said M’Whorter has drawn out of said firm; then the said M’Whorter agrees on final settlement, the state of the business being understood, to pay to said Dough-erty so much money as will make the share of the profits in said business equal. The said Dougherty binds himself to pay all the debts of said firm,” &c.
Shortly after the dissolution, Dougherty, with a large drove of cattle which had been purchased by M’Whor-ter, and transferred in the dissolution to Dougherty, went to the eastward, M’Whorter with him; in Pennsylvania M’Whorter died. Susannah M’Whorter, his widow, administered on the estate, and on the return of Dougherty he commenced settling up the business of the firm. This bill was filed on the 25th of March, 1822; bill charges the business to have been complicated; that in - collecting the eight thousand seven hundred and one dollars and sixty-four cents^ recited in the article of dissolution, he sustained a loss of at least one thousand dollars, and that the debts, instead .of being twenty-two. thousand two hundred and twenty dollars, amounted to the sum of thirty-four thousand dollars, and which he has been compelled to pay to creditors, the business of the firm having sustained a loss to the amount of six thousand and thirty-five dollars and twenty-three and a fourth cents; he also charges, in general terms, large losses upen the amount of debts due the firm, the debtors being *248 found insolvent. That by the said article, M’Whorter’s representatives are bound to refund the half of these losses. Bill prays an account, &c.
The widow had married Trigg; they appeared and filed their plea to the bill of complainant, setting out and insisting on, in bar of the relief sought, the following award:
We, the referees mutually chosen by John Dougherty, of the late firm of White, Dougherty and M’Whorter, and Susannah M’Whorter, as administratrix of James S. M’Whorter, deceased, to settle and adjust the business relative to the interest which the said James S. M’Whor-ter was entitled to in said concern, or the amount which he has received^ and whether the administratrix ought to refund any part of the amount heretofore received by her deceased husband, have taken the subject into their serious consideration, and after a tedious investigation and examination of all the papers, vouchers and evidence as exhibited by John Dougherty, and having his explanation of the same, are of opinion that there are no grounds for us to alter the settlement of profits, as ascertained by the parties themselves in the lifetime of James S. M’Whorter, and that Susannah M’Whorter, administratrix aforesaid, is not bound to refund any part of the profits, received by her late husband from the aforesaid firm of White, Dough-erty and M’Whorter. Given under our hands and seals, this, 21st May, 1S17, at Winchester, signed by the referees, with their seals.
WILLIAM ANDERSON,
JOHN W. HOLDER,
WALLACE ESTILL,
FRANCIS JONES,
JAMES PENN.
The plea being set down for argument, and heard by the Chancellor, was allowed; thereupon leave was given to amend the bill.
In this amendment, it is alleged that the arbitrators had submitted to them a part of the matters in controversy. *249 The arbitrators met in the town of Winchester, and made some slight examination of the accounts; many of the payments that had been made by complainant of the debts of White, Dougherty and M Whorter were disputed by the other side, and complainant asked leave to procure proof to substantiate them. The arbitrators seemed disposed to get rid of further trouble, and to evince a disposition not to act in the business. One of them drew up the award set forth in the plea to the bill, and they all remarked that the parties (complainant or respondent) might agree or disagree to said award, and that if either disagreed such party should not be bound; that the paper was not intended as an award or delivered as such; the arbitrators, or some of them, remarked to complainant, that he was not injured by not having his proof, as he was not bound by the opinion of the arbitrators, and that the same was only drawn up as an opinion, which he might dissent from; that complainant did dissent therefrom; and since pronouncing said supposed award, he has paid debts not before known of, and which were not submitted to the arbitrators, to the amount of sixteen hundred dollars, and that other debts are still due; that many of the items charged to have been paid, and for the half of which M’Whorter was bound, were never examined by the arbitrators, or pretended to be awarded upon.
The charges in this amended bill are expressly met and denied in the answer, wherein it is shown, that complainant introduced his witnesses, who were examined, and that during the great length of time the arbitrators were sitting, they were principally occupied in hearing the evidence and explanations of complainant, nor did they understand that he was prevented from introducing any evidence he thought proper.
The answer denies all fraud or concealment by M’-Whorter, so far as they know or believe, as charged, and calls for proof; they further say and plead that Dougherty was well informed of the state of said firm, and pur *250 chased with full knowledge of the debts due to and owing by said firm, as well in relation to sums as to persons, and that the award ought not to be opened or annulled.
To this there is a replication filed, and on the issues thus made, a portion of the testimony is taken. Trigg died in the fall of 1827, and in December, 1828, complainant filed a bill of revivor and supplement, calling in the representatives of Trigg, who, it is alleged, have the funds in their hands, and charging, as supplemental matter to the former bill, that the award should be set aside or treated as a nullity. <
1st. Because Holder and Penn were nearly related to the defendant, Mrs. M’Whorter, by consanguinity, and were, therefore, incompetent to make the award.
2d. That all of said arbitrators manifested improper prejudices, and were guilty of other misconduct towards complainant while trying and hearing said matters of difference.
3d. That the arbitrators committed manifest errors and mistakes in rejecting seven or eight thousand dollars of complainant’s vouchers and charges, but which vouchers cannot be particularly specified, because said referees cannot inform complainant what vouchers they did reject, (but say in their depositions they rejected five or seven thousand dollars.)
The answers to this bill show, that Mrs. Trigg is the personal representative of her first husband; th^tshe was so appointed before the marriage with Trigg, and since his death, remains the .sole administratrix. They answer the first ground in the supplemental charge, that Penn and Holder were relations, in remote degrees, to Mrs. Trigg. That complainant, Dougherty, not only knew of it, and personally advised the selection of them, but pressed respondent, Mrs. Trigg, to select them as two of the referees. Holder objected to serving, but complainant urged him to it, saying that he knew Holder •and Penn were relations, but they were honest, had been *251 merchants, were well qualified for such an investigation, and that he waived all objection. The other objections stated to the conduct of the arbitrators is expressly met and denied.
Much testimony has been taken, as well before filing the supplemental bill as afterwards.
The chancellor, upon the premises, heard the case and was of opinion that the complainant was entitled to relief: an account was ordered and taken, and upon considering of the exceptions thereto, decreed in favor of complainant that the sum of-dollars should be refunded.
We have the case before us upon an appeal from the decree. The case being one of deep interest-to both the parties, has been argued at the bar with great ability and zeal.
It must be perceived that the great question for the consideration of this court is, whether the award shall have weight and influence in the final decree tobe passed; the sufficiency of it is put directly in issue upon the objections urged by the complainant against it.
1st. That it was not delivered as a final settlement, award and determination upon the matters in dispute between the parties, they not having had the whole case before them, but was intended merely as matter of opinion, from which either party might dissent, and that complainant did dissent.
2d. That Holder and Penn are relations to the ad-ministratrix and therefore incompetent.
3d. Misbehavior in the arbitrators towards complainant, while investigating the matter in controversy; and
4th. That they did not consider of the claims, vouchers and evidence presented by the complainant, thereby committing mistakes to the amount of five or eight thousand dollars to his prejudice.
These several points of objection being in issue'must be determined by the evidence-.
*252 The award, upon its face, purports to be final; it re cites the matters submitted ato settle and adjust relative to the interest which said M’Whorter was entitled to; the amount which he has received; and whether the ad-ministratrix ought to refund.”
The arbitrators say they have taken the subject under their serious consideration, and after atedious investigation and examination of all the papers, vouchers and evidence, as exhibited by John Dougherty, and having had his explanations, are of opinion that there are no grounds to alter the settlements made by the parties, and that Mrs. M’-Whorter is not bound to refund any part of the profits received by her late husband.
The testimony of the arbitrators taken in the case is consistent with the award. Holder says, the object of the submission was a settlement of all matters of difference between complainant and Mrs. M’Whorter, admin-istratrix of the deceased, James S. M’Whorter, and he refers to the award for proof of the fact; and adds, that it was not delivered as matter of opinion, but, on the contrary, as a close of the matters in controversy. But Jones, one of the arbitrators, is more to the point; he says, in his deposition, that the arbitrators put the question to the parties to know what was the extent of the submission, and they were answered that the decision should be a final settlement between the estate of M’-Whorter and Dougherty, and Dougherty pledged his hon- or to stand by the award; after the award was read to the parties, Dougherty said he would not stand to it, or words conveying that idea.
Anderson, another of the arbitrators, says, all matters were to be submitted and the award was to be a final settlement of all matters, and that his intention was so to award. That they were about four days employed in the examination.
It is proper here to remark, that the award, both as to the matter submitted, and the action of the arbitrators up *253 on it, expressing; what was intended, and what was done, prima jacte, must be final, until it is conclusively shown that a mistake in these particulars has been committed; and even if we went so far as to admit that an award might be proved to be hollow and inconclusive, contrary to the terms used on its face, still the proof of the fact must come from him holding the affirmative of the proposition; therefore, Dougherty was bound to have proved his allegations. So far from his having done so, the proof is conclusive the other way.
We think, therefore, both from the face of the award, and testimony on the point, that all matters were submitted, and that the settlement, as expressed, was not mere matter of opinion, but was an arbitrament and final settlement. What was the use of submitting, if the whole inquiry was to be mere experiment? Why take up four or five days, call evidence and submit papers, and when all that the skill of men selected by the parties could do, is done, then capriciously leave to either party the right to dissent? Such a course would be dangerous to the rights of parties contesting; through such a channel the strength or weakness of evidence could be felt, and the way artfully opened for further contest before the courts. Again, upon this point Dougherty held all the evidence; the whole was in his hands; Mrs. MWhorter, as far as the settlement was concerned, was in much the most helpless condition; she could, at best, know but very little of the mercantile concerns of her deceased husband; probably was unskilled in accounts; years had elapsed before this matter was submitted; Mr. Dougherty was in possession of every information, and was himself a merchant. So circumstanced, is it supposable that Mr. Dougherty would desire to make such an experiment? Under such a state of things it can scarcely be supposed; but the point is settled by the proof, and is against the complainant.
We come now to the 2d objection: That Holder and Penn, two of the arbitrators, were relations to-the res *254 pondent, Mrs. M’Whorter. This she admits in her answer, but shows matter in avoidance of the objection. It was known to Mr. Dougherty. The arbitrators, atleast one of them, Mr. Holder, objected to serve on that account, but complainant urged them to it: he said he knew of the relationship, but that they were honest men, had been merchants, that he had confidence in them, and that he waived the objection. Such is the answer, and such the proofs. No one will question that Dougherty had power and right to waive the objection; and when he urged the arbitrators so situated to act, he may be said to have selected them. From all that appears in this record, he had as much to do in the selection as Mrs. M’Whorter. The proof of a waiver by Dougherty being conclusive, the objection vanishes.
3d Objection. Misbehavior of the arbitrators. This is a delicate part of the enquiry, for these gentlemen were judges of the parties’ own choosing; and while they, as judges in the case, should have preserved respect for the feelings and rights of the parties, so, also having acted for them, they are entitled to like respect from the parties; still, if the arbitrators have misdemeaned themselves, by a show of partiality to the injury of one of the parties, and as this may show itself many ways, and ought, when made out, to upturn the award, we will look to it with the more solicitude and care. The charge in the bill is very general, “that all of said referees manifested improper prejudice, and were guilty of other misconduct towards complainant, while trying and determining the matters of difference in said award mentioned.,f This conduct is in issue by the denial in the answer, so that the question arising upon this branch of our enquiry must depend upon the evidence. Hugh Caperton testifies to this point, but it is needless to recite what he says, because he is discredited by at least four witnesses, who say they will not believe him, and he is at best, supported but by one witness, who is called to his credit.
*255 Wm. Caperton, on his oath, says, that he heard Penn say, that if it had not been for himself and Jones, Dough-erty would have ruined the widow; that he was rich and she was poor; that Anderson (an arbitrator) told him that if the arbitrators had looked nicely into it, she would not have got much. To this point Anderson, the arbitrator, has been examined, and proves that he never had such conversation with the witness. Even supposing the after conversations of an arbitrator can be received to show his turpitude, to upturn the award, still, taking the whole of this evidence standing in the cause, met as it is by other proofs, and it cannot weigh any thing. We are not to forget that the arbitrators were on oath to do justice. Wm. Caperton stands alone and he is contradicted by Anderson, and is opposed by- the swearing of all the arbitrators, except Penn, who was dead, all saying the award was fairly made.
It is proved, that during the investigation an altercation took place between Jones, one of the arbitrators, and Dougherty, the complainant.
James Estill says he was called as a witness before the arbitrators, that while there some words passed between Jones and Dougherty; Dougherty attempted to explain some account, Jones ordered him to shut his mouth and not open it again, and perhaps told him to leave the room.
Wallace Estill, one of the arbitrators, gives this with more minuteness; he says, while acting, “Dougherty frequently came into the room where we were, and insisted on being sworn himself as an evidence; the arbitrators not thinking it legal in such a large transaction, where other evidence could be had, the Major rather insisting on it, an argument took place between him and Capt. Jones about the firm doing a losing business. Capt. J. insisted it could not have done a losing business, knowing M’Whor-ter to be an honest man, and the situation of the times or trade at that time. Major D. insisted it had done a losing business and proposed swearing to it. Jones re *256 plied, to admit the Major, he would swear they had lost fifty thousand dollars, and he did not mind him more than a wood-pecker, and so they became mild.”
That this is the only altercation that took place is pretty evident from the record. The manner of asking the question by Dougherty proves it; he asks about a quarrel which took place, and calls the attention of the witnesses to no other.
The sum of the whole matter is, that one of the parties wished to become a witness in his own cause, to prove the very matter in dispute, there being other evidence. Jones, a lawyer, and an arbitrator of that party’s own choosing, resisted him (for the altercation seems to have been mostly between them.) The impropriety of the expressions consisted in Jones’ imputing to Dougherty the extravagance of his swearing when let in for himself, and the little respect he would have for it if admitted. It must be seen that both were upon extremes, Dougherty was anxious to become his own witness; the arbitrators, all againstit, because, in their opinion, it was improper to allow it; and it may fairly be said, from the view given of the dispute by the witness, that Jones was no more rude than Dougherty was positive in his demand; he had to be met, and though there was an impropriety in the manner of doing it, still it would be feeble grounds to upturn an award for misconduct, especially as to all other matters, touching the admission of evidence, Dougherty was heard with every degree of respe.ct and with patience.
Connected with this head, we are also to consider the allegation against the arbitrators, that they -did not examine the accounts and vouchers laid before them; that complainant was not notified of the items rejected, and that items were rejected which should have been allowed. This charge is thrown in under the head of misconduct. The whole of these charges vanish when the evidence is compared with the charge. The arbitrators, in their testimony, show that the fact is otherwise; it is true they *257 did not make out a regular account of rejected vouchers; but they kept memoranda constantly directed to the question, whether any material change should be made in the settlement had between M’Whorter, in his lifetime, and the complainant. The whole of the calculations predicated on what should be allowed, and what. disallowed, resulted in this, that Mrs. M’Whorter was not liable under the covenant to refund.
And now it will be the business of the court, upon this branch of the case, to consider of it from the facts in connection with the law. If it was true, as alleged by Dougherty, that all these partialities existed, so far operating upon the referees that they could not do complainant justice, he had it in his power to save himself from such influence; he could at any time, before making up the award, have revoked the submission. The authority was revocable, and the hand of the arbitrator could have been stayed before any of the supposed injuries could have resulted. Kyd on Aw. 16, 17. And as this was a verbal submission, so a verbal revocation would have been sufficient. Same book. Now ,if it was true that Dougherty had ever distrusted the arbitrators, on any day of the investigation, touching the admission of evidence, the allowance or rejection of items, or from any thing that was personal in their conduct, would not the com-j plainan't have availed himself of the advantages the law gave him by putting an immediate end to the enquiry?
And again: surely if these charges could have been fairly made out against the referees, they would have appeared in the first amendment of the bill; nay, it may be asked why omit to notice it in the original bill when filed? Take it, however, that being brought out against complainant by plea to the first bill, and then, for the first time he was warned of the necessity of assailing it with all his objections, yet we find no intimation of partiality, prejudice or misconduct in the arbitrators, from December, 1822, the time of allowing the plea, up to Septem *258 ber, 1828, when the supplemental matter was brought forward. This circumstance of delay for so long a period some of the arbitrators in the meanwhile having died may well be taken, with the testimony showing the charges against the referees, to be unfounded in fact. The evidence to set aside the award, under such circumstances, should be conclusive.
It is almost needless to repeat here the doctrine on the efficacy of awards. They are as conclusive as the judgment of a court. Choosing arbitrators, and they" acting withip the pale of their authority, the award becomes the ■act of the parties, and they are estopped by it. There is proof, over and above all we have here stated, which goes to show, that Dougherty expressed himself, that he was satisfied the arbitrators did what they thought right.
The chancellor having had a different view of the case upon the effect of the award, and having ordered an account, has produced much labor and costs. While this is to be regretted, we accord to him the right to judge for himself; and claiming the same right of judging here for ourselves, we are the more confirmed in the opinion entertained, as that opinion has been attentively considered, and is unanimous with the members of this court.
Decree reversed.